DANIEL G. BOGDEN
United States Attorney
PHILLIP N. SMITH, JR.
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada  89101
PHONE: (702) 388-6503
FAX: (702) 388-6418

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
-oOo-

UNITED STATES OF AMERICA,

              Plaintiff,

     vs.

LEON JOHNSON,

              Defendant.

Case No. 2:15-cr-220-JCM-VCF

GOVERNMENT'S RESPONSE TO
DEFENDANT'S OBJECTIONS TO
REPORT AND RECOMMENDATION

**CERTIFICATION**

Pursuant to LCR 12-1, undersigned counsel hereby certifies that this Response is filed in a timely manner.  The Defendant's "Objections to Report and Recommendation" was filed and served on December 16, 2015.   *See* Docket #40.   Pursuant to a stipulation between the parties, the Government's response is due on or before January 19, 2016.

COMES NOW the United States of America, by and through DANIEL G. BOGDEN, United States Attorney, and Phillip N. Smith, Jr., Assistant United States Attorney, and files this response to Leon Johnson's (hereinafter, "the Defendant") Objections to the Magistrate Judge's Report and Recommendation, which was filed by the Defendant, by and through his counsel, Paul D. Riddle, Assistant Federal Public Defender, on December 16, 2015.

1

# I.     RELEVANT PROCEDURAL HISTORY

The Defendant filed a "Motion to Dismiss Counts Two and Four of the Indictment" (hereinafter, "Defendant's Motion") on October 5, 2015.  *See* Docket #26.  The Government filed a response in opposition to the Defendant's Motion on November 2, 2015.  *See* Docket #31.  The Defendant did not file a reply.  The Defendant's Motion to Dismiss argued that Counts Two and Four of the Indictment, charging him with Use of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c), must be dismissed because the crime alleged in Counts One and Three of the Indictment (Hobbs Act robbery in violation of 18 U.S.C. § 1951) is not a predicate "crime of violence" due to the fact that it could be accomplished without the use of "violent force."  The Defendant's Motion also alleged that Hobbs Act robbery no longer qualified under the "residual" clause of 18 U.S.C. § 924(c) pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015).

On November 17, 2015, the Magistrate Judge issued a Report and Recommendation (hereinafter, "R&R") recommending that the Defendant's Motion be denied.  *See* Docket #33.  The Defendant filed Objections to the Magistrate Judge's R&R on December 16, 2015.  *See* Docket #40 (hereinafter, "Defendant's Objections").  The Government hereby submits the following Response to the Defendant's Objections.  The Government's response fully incorporates herein any and all arguments made in its response to the Defendant's Motion to Dismiss.

# II.     ARGUMENT

The Defendant's Objections to the R&R raise no new legal issues.  Rather, the Defendant's Objections simply ask this Court to reject the Magistrate Judge's legal analysis.  The Government maintains that the Magistrate Judge's ultimate finding in determining that Hobbs Act robbery is indeed a "crime of violence" was correct, and that conclusion should not be overturned by this Court.  Consequently, this Court should deny the Defendant's Motion.  In the R&R, the Magistrate

Judge specifically found that 1) the Indictment was facially valid because Hobbs Act robbery is a crime of violence under the "elements" clause of 18 U.S.C. § 924(c)(3)(A); 2) the Court's duty is not to determine whether or not the Defendant is entitled to a judgment on the pleadings; 3) the categorical approach suggested by the Defendant should not be applied at this procedural posture to challenge the sufficiency of the facially-valid Indictment; 4) even if the Court were to apply a categorical analysis, it would apply the "modified categorical approach" and still determine that Hobbs Act robbery is a crime of violence under the "elements" clause of 18 U.S.C. § 924(c)(3)(A); and 5) the Court need not reach the Defendant's constitutional argument about the vagueness of 18 U.S.C. § 924(c)'s "residual clause."   The R&R went on to recommend that consequently, the Defendant's Motion to Dismiss should be denied.  The Government concurs with the Magistrate Judge's R&R and asks that this Court adopt it.

The R&R also held that "[a] jury may eventually determine that Mr. Johnson committed the offense of robbery by placing the victim in fear of a future injury.  The jury may, therefore, conclude that Mr. Johnson did not commit a crime of violence."  R&R, at 4.  The Government respectfully disagrees with the R&R only on that point, for reasons explained *infra*.  As courts have struggled to apply the statutory definitions of "violent felony" (in the Armed Career Criminal Act and "crime of violence" (in 18 U.S.C. § 924(c) and other provisions), defendants have made increasingly outlandish suggestions for what indisputably-violent crimes do not qualify.  And now this effort reaches a new nadir, with the argument by the Defendant here that Hobbs Act robbery, a quintessential violent offense, is actually not a "crime of violence," and as a result the counts in the Indictment under 18 U.S.C. § 924(c) for using and carrying a firearm during and in relation to a crime of violence must be dismissed.  His argument, not surprisingly, fails.

The Defendant first objects that the Magistrate Judge erred in suggesting that the "categorical analysis" was inappropriate at the Rule 12(b) stage.  Although the Government did not urge this

approach, the Magistrate Judge's point is well taken. "In the vast majority of cases, [the] one dimensional analytical construct [of the categorical approach] is used by sentencing courts conducting a cold record review of a prior conviction to determine whether its elements square with the definition of 'crime of violence' articulated in § 924(c)(3), the Armed Career Criminal Act." *United States v. Standberry*, -- F.Supp.3d --, 2015 WL 5920008, *2 (E.D.Va. October 9, 2015).

"Unlike the retrospective analysis conducted by sentencing courts, trial courts have the benefit of viewing the evidence as it unfolds." *Id*. Thus even if, as the parties both assume, the question whether the Defendant's offense is a "crime of violence" is a question of law for the Court to decide (rather than a question of fact for the jury's determination), it makes little sense that the Court should be unnecessarily limited to the one-dimensional analytical construct of the categorical approach, rather than viewing the evidence of this Defendant's offense as it unfolds.

Nevertheless, as the Defendant correctly notes, current Ninth Circuit law states that, while "[t]he jury must find the facts underlying the charged offense … in this case[,] the court determines whether that category of offense is a crime of violence." *United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995). The Government notes that *Amparo* involved a defendant's challenge to jury instructions on direct appeal following conviction, and thus the court had no occasion to address the distinctions between that procedural posture and the posture of the instant case—distinctions the Magistrate Judge here found significant. That said, unless and until the court of appeals revisits this issue, it appears that the district court must—as the Magistrate Judge here correctly did—determine whether the predicate offence underlying the 924(c) charge meets the statutory definition of a "crime of violence."

The Defendant's argument that Hobbs Act robbery is not a crime of violence rests on the recent decision in *Johnson*, addressing the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)—not at issue in this case—which increases both the minimum and maximum penalties for

a person convicted of a firearm offense under 18 U.S.C. § 922(g).  ACCA status requires three previous convictions for a "violent felony" or "serious drug offense."  *Johnson* does not affect the definition of a "serious drug offense."  As for "violent felony," there are three "clauses" in the statute defining what type of prior crime qualifies.  For each, the sentencing court must use the categorical approach, looking at the statute that was the basis of the conviction, not the actual facts of the earlier crime.  The ACCA's three clauses are:

    1.    The "elements" clause: "has as an element the use, attempted use, or threatened use of physical force against the person of another";

    2.    The "enumerated offenses" clause: "is burglary, arson, or extortion, [or] involves use of explosives"; and

    3.    The "residual" clause: "or otherwise involves conduct that presents a serious potential risk of physical injury to another."

*Johnson* invalidated the residual clause as impermissibly vague.  Importantly, the Supreme Court expressly added:  "Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."  135 S. Ct. at 2563.

The Defendant here is charged under 18 U.S.C. § 924(c) for using and carrying a firearm during and in relation to a crime of violence.  The statute defines "crime of violence" as follows:

For purposes of this subsection the term "crime of violence" means an offense that is a felony and –

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3).  Subsection (B), like the invalidated provision in ACCA, is a residual clause, although it is not worded precisely the same as the ACCA provision.  The Defendant nonetheless argues that the

residual clause in Section 924(c)(3)(B) should similarly be invalidated, and that Hobbs Act robbery does not qualify under the elements clause of Section 924(c)(3)(A).  He is wrong, for numerous reasons.  First, his position is manifestly at odds with legislative intent.  Second, Hobbs Act robbery is in fact a crime of violence under the elements clause.  Third, the residual clause of Section 924(c)(3)(B) remains valid.[1]

### A.    Congress Obviously Intended to Include Robbery as a "Crime of Violence."

The obvious intent of Section 924(c) is to assure an additional punishment for those who create heightened risk, or cause additional harm, through possession or use of a firearm in connection with a violent crime or drug trafficking offense.  The very point of the statute was to increase the penalty for violent crimes like robbery if the defendant was armed.[2]  The Defendant's interpretation, never accepted by any court, would simply defeat the statute and create an absurd result.  That is unacceptable.  A court "cannot interpret federal statutes to negate their own stated purposes."  *King v. Burwell*, 135 S. Ct. 2480, 2493 (2015), *quoting New York State Dept. of Social Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973).

---

[1] To date, every one of the numerous district courts to consider the Defendant's argument, with regard to either bank robbery or Hobbs Act robbery, have rejected it, and concluded that these offenses are "crimes of violence" under § 924(c).  *See, e.g., United States v. Mitchell*, 2015 WL 7283132, at *3 (E.D. Wis. Nov. 17, 2015) (citing many cases).  In recent months, some courts have suggested that the categorical approach should not apply at all in defining a "crime of violence" under § 924(c).  *See, e.g., United States v. Church*, 2015 WL 7738032, at *3 (N.D. Ind. Dec. 1, 2015); *United States v. McDaniels*, 2015 WL 7455539, at *2 (E.D. Va. Nov. 23, 2015).  Notably, in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), addressing the identical "crime of violence" definition in 18 U.S.C. § 16(a), the Court stated that the statutory "language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime."  *Id.* at 7.

[2] "Congress's 'overriding purpose' in passing Section 924(c) 'was to combat the increasing use of guns to commit federal felonies.' . . .  The chief sponsor of this provision explained that 'the provision seeks "to persuade the man who is tempted to commit a Federal felony to leave his gun at home."'"  *United States v. Walker*, 473 F.3d 71, 78 (3d Cir. 2007), *quoting Simpson v. United States,* 435 U.S. 6, 10 (1978); *Muscarello v. United States,* 524 U.S. 125, 132 (1998).

During the development of Section 924(c), bank robbery (which the Defendant states is related to Hobbs Act robbery and also no longer qualifies as a 924(c) predicate, *see* Defendant's Objections at 15-16) was repeatedly cited as the paradigmatic crime of violence addressed by the statute.  The original enactment of Section 924(c) in 1968 applied to the use of a firearm to commit "any felony."  The statute was amended in 1984 to refer instead to a "crime of violence."  *See Bailey v. United States*, 516 U.S. 137, 147-48 (1995), *citing* the Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 1005(a), 98 Stat. 2138-39.

At the time, the Senate committee report which recommended this and other amendments to the statute stated, "for example, a person convicted of  armed bank robbery in violation of section 2113(a) and (d) and of using a gun in its commission (for example by pointing it at a teller or otherwise displaying it whether or not it is fired) would have to serve five years (assuming it was his first conviction under the subsection) less only good time credit for proper behavior in prison, before his sentence for the conviction under section 2113(a) and (d) could start to run."  S. Rep. 98-225, 98th cong., 1st sess., 1984 U.S.C.C.A.N. 3182, 3493 (Aug. 4, 1983).  The report further explained that one of the specific purposes of the amendment was to abrogate *Simpson v. United States*, 435 U.S. 6 (1978), which held that Congress did not intend to authorize application of both the enhancement in Section 2113(d) for armed bank robbery and the consecutive five-year penalty under Section 924(c) in the case of a bank robbery committed with a firearm.

The report explained that, as amended, Section 924(c) would require "a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any federal 'crime of violence,' including offenses such as bank robbery or assault on a federal officer which provide for their own enhanced punishment if committed by means of a dangerous weapon."  1984

U.S.C.C.A.N. at 3491.[3]  Since 1984, courts have repeatedly and uniformly treated federal robbery offenses as crimes of violence, without any objection by Congress (or the courts).  To the contrary, Congress has repeatedly amended the statute to expand its reach and to increase the penalties. *Abbott v. United States*, 562 U.S. 8, 23-24 (2010) (reciting this history, and accordingly rejecting an effort to narrow § 924(c)).[4]

Thus, the statute was explicitly adopted to apply to bank robbery and like federal robbery offenses.  A statute may not be interpreted to produce an absurd result.  *See, e.g., Castleman v. United States*, 134 S. Ct. 1405, 1413 (2014); *United States v. Hayes*, 555 U.S. 415, 427 (2009).  *See also Taylor v. United States*, 495 U.S. 575, 594 (1990) ("[W]e shall not read into the statute a definition . . . so obviously ill-suited to its purposes.").  This is not just a situation in which the interpretation advocated by the Defendant would create an absurd result at odds with legislative intent; it is one where the interpretation would flout outright the obvious legislative intent.  For this reason alone, the Defendant's argument that Hobbs Act robbery is not subject to Section 924(c) must be rejected.

. . .

. . .

---

[3] The 1984 Act also created 18 U.S.C. § 929, which provides an additional mandatory minimum sentence for using or carrying a firearm in relation to a crime of violence or drug trafficking crime, if the defendant is in possession of armor-piercing ammunition.  In explaining this statute, the Senate committee again used bank robbery as an example.  *Id.* at 3494 ("thus, a person who robbed a bank with a handgun loaded with armor-piercing ammunition would, if charged with and convicted of a violation of 18 U.S.C. 924 and 929, be sentenced to a mandatory term of at least ten years – five for carrying the gun and at least five for the bullets").  The statute relies on the same definition of "crime of violence."  The Defendant's argument would therefore invalidate this and many other statutes as well, despite the obvious Congressional intent.

[4] The Supreme Court cited the "Firearms Owners' Protection Act of 1986, § 104(a), 100 Stat. 456-457 (increasing sentences for certain firearms and adding drug trafficking as a predicate felony); Anti-Drug Abuse Act of 1988, § 6460, 102 Stat. 4373-4374 (increasing sentences); Crime Control Act of 1990, § 1101, 104 Stat. 4829 (same); Public Safety and Recreational Firearms Use Protection Act, 1994, Pub.L. 103–322, § 110102(c), 108 Stat. 1998 (same)."  *Abbott,* 562 U.S. at 24 n.6.

**B.   Hobbs Act Robbery is a "Crime of Violence" Under the Elements Clause.**

Hobbs Act robbery plainly falls within the elements clause of Section 924(c)(3)(A).  The Hobbs Act prohibits robbery that interferes with interstate commerce.  The term "robbery" is defined as follows:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).  This statute obviously "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," and therefore qualifies as a "crime of violence" under Section 924(c)(3)(A).  The Defendant presents a number of arguments in opposition, all of them unavailing.

The Defendant first asserts that Hobbs Act is an indivisible offense.  Defendant's Objections, at 8-10.  The Hobbs Act statute is unquestionably divisible in one sense, in that it penalizes one who, among other things, interferes with commerce "by robbery *or* extortion or attempts or conspires so to do."  (Emphasis added).  In this case, the Defendant is charged with interfering with commerce by *robbery*, which is an important distinction.  The Defendant argues that the robbery prong of the Hobbs Act is not divisible, and that the indivisible offense of Hobbs Act robbery does not "ha[ve] as an element, the use, attempted use, or threatened use of physical force against the person or property of another."   To bolster that argument, he cites at length various model jury instructions, pattern instructions, and cases from other circuits to assert, among other things, 1) that the use or threat of force or violence might be aimed at a third person, or at causing "economic rather than physical injury"; 2) that "unanimity is not required"; 3) that "courts instruct juries in a way that does not require jurors to agree on whether a Hobbs Act robbery offense was committed by force or violence

versus fear of injury to person or property"; and 4) that Hobbs Act robbery can be accomplished "by threatening injury to another's intangible property."

The Defendant's arguments fail for several reasons.  First, "[m]odel jury instructions are not authoritative statements of law."  *Dunlap v. Liberty Nat. Products, Inc.*, 2015 WL 1778477, at *8 (D.Or. Apr. 20, 2015).  The Defendant does not cite, and the Government has not found, any case from this Court or the Ninth Circuit using or adopting "Modern Federal Jury Instruction – Criminal" 50-3 or 50-5.  The Defendant's reliance on these non-binding model instructions as a definitive statement of the elements of Hobbs Act robbery is therefore misplaced.  The Defendant also alleges that Hobbs Act robbery fails to qualify because it may be accomplished by placing someone in fear of injury to his intangible property.  Defendant's Objections, at 10-11.  He asserts that "[t]his reason alone automatically disqualifies Hobbs Act robbery from qualifying as a 'crime of violence' under the § 924(c) "force" clause, which requires *violent (i.e., strong) physical force* against person or property."  *Id.* (emphasis in original).  That view would simply write Section 924(c)(3)(A) out of existence, as if Congress wrote a statute that cannot apply to any crime.  But Section 924(c)(3)(A) explicitly includes in the definition any offense that "has as an element the use, attempted use, or threatened use of physical force against the . . . *property* of another," and the Hobbs Act includes in the definition of robbery the use of "actual or threatened force, or violence, or fear of injury, immediate or future, to [the victim's] *property*."  § 1951(b)(1).  Neither statute distinguishes between tangible and intangible property.  These statutes are an exact match, and will embrace any violent act directed at property.

The Defendant cites three out-of-circuit cases for the proposition that Hobbs Act robbery "can be committed via threats to devalue some intangible economic interest like a stock holding or contract right."  Defendant's Objections, at 11 (citing *United States v. Arena*, 180 F.3d 380, 392 (2d. Cir. 1999); *United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970); *United States v. Local 560 of*

the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, 780 F.2d 267, 281 (3d Cir. 1986)).  His reliance on those cases is likewise misplaced.  All three of the cases the Defendant cites involved prosecutions for Hobbs Act *extortion*, not Hobbs Act *robbery*. The Defendant does not cite any case, precedential or otherwise, involving a Hobbs Act robbery that entailed putting a victim in "fear of injury to his intangible property."  The Government has not found such a case, and indeed cannot conceive of a situation in which such a robbery (as opposed to an extortion) could arise.  Moreover, just this year, the Ninth Circuit expressly declined to "decide whether intangible property can be the subject of Hobbs Act robbery."  *See United States v. Luong*, 610 F. App'x 598, 600 (9th Cir. 2015).

In short, the Defendant's contention that Hobbs Act Robbery does not fall within the definition of crime of violence because it can be committed by putting a victim in fear of injury to his intangible property is without support.  The Defendant also relies on a grab bag of cases, most notably *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), which support the seemingly bizarre assertion that any crime that may involve bodily injury inflicted through the use of poison or some other indirect means does not necessarily involve the violent use of physical force and therefore does not categorically qualify as a crime of violence under a federal recidivist statute such as ACCA or 924(c).  The Defendant, however, overlooks the Supreme Court's rejection in *United States v. Castleman,* 134 S. Ct. 1405 (2014), of this analysis.  In *Castleman*, the Court addressed the offense of possession of a gun by a person convicted of a misdemeanor crime of domestic violence. Such a crime is defined in part as having as an element the "use or attempted use of physical force." The trial court held that the Tennessee assault statute at issue did not qualify, "because one can cause bodily injury without violent contact, for example, by deceiving [the victim] into drinking a poisoned beverage."  134 S. Ct. at 1409 (internal quotation marks omitted).

1         The Supreme Court rejected this interpretation of "force," relying on its statement in *Johnson*

2    *v. United States,* 559 U.S. 133 (2010), that "physical force" is simply "force exerted by and through

3    concrete bodies," as opposed to "intellectual force or emotional force."   *Id.* at 1414, quoting

4    *Johnson,* 559 U.S. at 138.   The Court continued:  "It is impossible to cause bodily injury without

5    applying force in the common-law sense. . . .  [T]he knowing or intentional application of force is a

6    'use' of force."  *Id.* at 1415.  Thus, the Court explained, "the word 'use' 'conveys the idea that the

7    thing used (here, 'physical force') has been made the user's instrument.'"   *Id.* (citation omitted).

8    Where a person gives poison, therefore, the use of force "is not the act of 'sprinkl[ing]' the poison; it

9    is the act of employing poison knowingly as a device to cause physical harm.  That the harm occurs

10   indirectly, rather than directly (as with a kick or punch), does not matter.  Under Castleman's logic,

11   after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet,

12   not the trigger, that actually strikes the victim."  *Id.*[5]  The Defendant's objection therefore fails.  *See*

13   *United States v. McDaniels,* 2015 WL 7455539, at *4-5 (E.D. Va. Nov. 23, 2015) (explaining how

14   *Castleman* rejects the Fourth Circuit precedent about the poison hypothetical); *see also United States*

15   *v. Morgan*, No. CR 14-20610, 2015 WL 9463975, at *2 (E.D. Mich. Dec. 18, 2015); *United States v.*

16   *Merinord*, No. 5:15-CR-136, 2015 WL 6457166, at *4 (E.D.N.C. Oct. 26, 2015) ("The Court can

17   conceive of no scenario in which a person commits robbery by fear of physical injury without

18   threatening physical harm to the person or property of another—even the vaunted example of poison

19   fails."); *United States v. Cruz-Rivera*, No. 3:15-CR-00486 JAF, 2015 WL 6394416, at *4 (D.P.R.

20

21   [5] Separately, the *Castleman* Court held that "physical force" is interpreted differently in the context
     of the domestic violence statute, in contrast to the decision in *Johnson* (2010) regarding the ACCA.

22   *Castleman* held that a predicate domestic violence statute may apply to mere touching, not only the
     "violent force" required in *Johnson* (2010) for application of the ACCA elements clause. But

23   *Castleman* suggested no distinction between the domestic violence and ACCA contexts in the
     separate part of the opinion, relevant here, describing the meaning of "use" of force.  Indeed, this

24   part of the opinion explicitly relies on *Johnson* (2010).

1   Oct. 21, 2015); *United States v. Evans*, No. 5:15-CR-57-H, 2015 WL 6673182, at *5 (E.D.N.C. Oct.

2   20, 2015).

3          The Defendant also states that Hobbs Act robbery does not qualify because "the act of

4   putting someone in fear of injury, as defined under the Hobbs Act robbery statute . . . does not

5   require an *intentional* threat of physical force."   Defendant's Objections, at 14 (emphasis in

6   original).  Analogizing to the federal bank robbery statute, he observes that whether a victim was in

7   fear of injury is defined by an objective standard.[6]  The Defendant's argument, however, misstates

8   the pertinent intent requirement.  Addressing bank robbery under Section 2113(a), the Supreme

9   Court has explained that the robbery offense requires "proof of general intent – that the defendant

10  possessed knowledge with respect to the actus reus of the crime (here, the taking of property of

11  another by force and violence or intimidation.)."  *Carter v. United States*, 530 U.S. 255, 267 (2000).

12         Although a defendant need not intend to intimidate the person from whom the defendant is

13  taking property against that victim's will, the defendant must know (a) that he is taking property

14  against the victim's will and (b) that the defendant's actions in accomplishing that involve force or

15  are objectively intimidating.  *See, e.g., United States v. Bradshaw*, 580 F.3d 1129, 1132-33 (10th

16  Cir. 2009) (citing *Carter* and noting that the "jury could infer that [the defendant] acted with a

17  knowing intent to intimidate").  In *Leocal*, addressing the definition of "crime of violence" in 18

18  U.S.C. § 16 that matches that in Section 924(c)(3), the Supreme Court held that an offense resting on

19  negligent or otherwise accidental conduct does not suffice.  *Id.* at 9.  In contrast, *Castleman* held,

20

21  [6] The Defendant's argument would support the absurd conclusion that armed bank robbery, a
    paradigmatic violent crime explicitly discussed in the legislative history described earlier as the
22  model of a "crime of violence," is also not a "crime of violence" under § 924(c)(3)(A).   The
    Defendant notes that the bank robbery statute, 18 U.S.C. § 2113(a), may be violated through the use
23  of "intimidation."   But "intimidation" means imposing a fear of physical injury, and thus also falls
    within the "crime of violence" definition of threat to injure. See, e.g., *United States v. Higdon*, 832
24  F.2d 312, 315 (5th Cir. 1987) (equating "intimidation" and "fear of injury" and noting that the 1948
    revision to § 2113(a) substituted the two phrases without intending a change in meaning).

"the knowing or intentional application of force is a 'use' of force." 134 S. Ct. at 1415. A robbery offense involving the knowing use or threat of force *or* intimidation thus plainly presents a sufficient mens rea to come within the statutory definition of a "crime of violence." *See United States v. Mitchell*, 2015 WL 7283132, at *3 (E.D.Wis. Nov. 17, 2015) (one of many cases rejecting the current defense argument, explaining that "taking money by force, violence, or intimidation involves a higher degree of culpability than accidental, negligent, or reckless conduct").

The Defendant also attempts to convince this Court that *all* of the decisions by other district courts across the country which have squarely and unanimously held that Hobbs Act robbery is a "crime of violence" post-*Johnson* are incorrect and that they must be rejected. The Government submits that the Defendant's position with that regard is simply untenable, and it fails for the reasons already stated *supra*. In sum, Hobbs Act robbery is a "crime of violence" subject to Section 924(c). It has as an element the use or threatened use of physical force against the person or property of another, exactly as Section 924(c)(3)(A) requires. Not surprisingly, Congress did not, as the Defendant would presume, intend to enhance the punishment for possession or use of a gun during a robbery, and then write the elements clause so incompetently as to exclude every federal robbery offense from its coverage, leaving only the residual clause to bear all the weight. For these reasons, the Magistrate Judge properly denied the Defendant's Motion.

### C.       The 924(c) Residual Clause is Valid.

Even if Hobbs Act robbery did not fall within the elements clause of Section 924(c)(3)(A), it qualifies under the residual clause of Section 924(c)(3)(B), as the offense, by its nature, presents a substantial risk that physical force will be employed against the person or property of another. The Defendant does not dispute that Hobbs Act robbery presents such a substantial risk; rather, he argues that the residual clause is entirely invalid, in light of the 2015 decision in *Johnson.* That is incorrect, and the Court may deny the Defendant's Motion on this alternative ground as well. In *Johnson*, the

14

Supreme Court held that the ACCA's residual clause, *i.e.*, the provision that defines a "violent felony" to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), is vague and, therefore, imposing an increased sentence under the residual clause "violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563.

A combination of factors, which is *not* present in the instant case, convinced the *Johnson* Court to find the ACCA's residual clause vague.  The Court determined that the clause "leaves grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2557.  The Court was concerned that the assessment was tied to considering risk in an "ordinary case," but without accounting for "real-world facts or statutory elements." *Id.*  The Court also found that the ACCA "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558.  The Court held that the ACCA's structure "forces courts to interpret 'serious potential risk' in light of the four enumerated crimes." *Id.*  This was problematic because the degree of risk posed by the enumerated crimes was "'far from clear.'" *Id.*  Additionally, the Court stressed that it had repeatedly attempted to craft a principled standard for the residual clause but had failed to do so, further supporting its vagueness. *Id.*

The Government acknowledges that, like the ACCA, Section 924(c)(3)(B) involves a risk-based analysis of the "ordinary case" of a predicate offense and that the Court in *Johnson* identified the ordinary-case analysis as a problematic feature of the ACCA's residual clause.  But *Johnson* did not turn solely on the ordinary-case inquiry, and Section 924(c) presents circumstances materially different from those in *Johnson*.  Importantly, the *Johnson* Court believed that "the uncertainties in [the ACCA's] residual clause may be tolerable in isolation," but their presence *together* led the Court to its holding. *See id.* at 2560.  Section 924(c)(3)(B) is significantly and materially narrower than the ACCA.  Unlike the ACCA, Section 924(c) contains no confusing list of enumerated

offenses; it has been limited to a narrow risk of force during the commission of the offense; and the Supreme Court never has disagreed about its proper construction.   Based on these statutory differences, *Johnson* does not support the conclusion that Section 924(c)(3)(B) is vague.[7]

### 1.    The enumerated offenses in the ACCA are absent.

The residual clause stated in Section 924(c)(3)(B) (describing an offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") differs from the ACCA because it does not contain an introductory list of enumerated crimes followed by an "otherwise" provision that the Supreme Court treated as qualifying the predicate offenses.   The enumerated list had long troubled members of the Court.   *See, e.g., Begay v. United States,* 553 U.S. 137, 143 (2008) ("the examples are . . . far from clear with respect to the degree of risk each poses.").   The interpretive difficulties posed by the list of enumerated crimes pervaded the Court's analysis in 2015 in *Johnson*.   For example, the Court attributed part of the "uncertainty about how much risk it takes for a crime to qualify" under the ACCA to the residual clause's structure, which "forces courts to interpret 'serious potential risk' in light of the four enumerated crimes – burglary, arson, extortion, and crimes involving the use of explosives."   *Johnson*, 135 S. Ct. at 2558.

The Court again referred to the enumerated crimes in explaining why its earlier ACCA decisions did "not succeed in bringing clarity to the meaning of the residual clause."   *Id.* at 2559. Critically, the Court distinguished other statutes requiring risk-based assessments in part because

---

[7] In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), a divided court held that the residual clause in the "crime of violence" definition in 18 U.S.C. § 16(b), which is identical to that in Section 924(c)(3)(B), is unconstitutionally vague in light of *Johnson*.   The court agreed in *United States v. Vivas-Ceja*, -- F.3d --, 2015 WL 9301373 (7th Cir. Dec. 22, 2015), in a brief analysis.   At the same time, numerous district courts have taken the opposite view in recent months, adopting the Government's view.   *See United States v. Checora*, 2015 WL 9305672, at *8 (D.Utah Dec. 21, 2015) (citing cases).   The Government has filed a petition for rehearing *en banc* in *Dimaya*, and is assessing whether to do the same in the Seventh Circuit.

they did not "link[] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. Section 924(c)(3)(B), like the statutes the Court distinguished in *Johnson*, contains no "confusing list" to cloud the analysis. Further, in contrast to the ACCA, Section 924(c)(3)(B) contains language identical to many other federal and state statutes. Rejection of the residual clause here would undermine numerous statutory definitions of "crime of violence," starting with the definition in 18 U.S.C. § 16(b) that is incorporated in myriad other statutes. Thus, while *Johnson* believed that striking the ACCA's residual clause would have little effect on other risk-based statutes, *see Johnson*, 135 S. Ct. at 2561, a decision striking Section 924(c)(3)(B) would significantly impact numerous federal and state laws.[8] That is not only harmful but unwarranted, where the residual clause at issue requires an ordinary assessment of risk not governed by reference to a confusing list of enumerated crimes.

**2.      Section 924(c)(3)(B) does not go beyond the elements of the offense to consider potential extra-offense conduct.**

---

[8] Prominent examples include 18 U.S.C. § 3142(f)(1)(A) and (g)(1) (bail statute), and the aggravated felony provision of the immigration laws, 8 U.S.C. § 1101(a)(43)(F), which affects numerous immigration issues. Other statutes that incorporate the 16(b) definition include 18 U.S.C. § 25 (use of minors in crimes of violence); 18 U.S.C. § 119 (protection of individuals performing certain official duties ); 18 U.S.C. § 842(p)(2) (disseminating information regarding explosive or destructive devices or weapons of mass destruction with intent that it be used for or in furtherance of crimes of violence); 18 U.S.C. § 844(o) (transferring explosive materials to be used to commit crimes of violence); 18 U.S.C. § 929 (enhanced penalties for offenses committed while possessing armor-piercing ammunition); 18 U.S.C. § 931 (possession of body armor by someone convicted of a crime of violence); 18 U.S.C. § 1028(b)(3)(B) (enhanced penalties for offenses involving fraudulent identification documents committed in connection with crime of violence); 18 U.S.C. § 1952 (traveling or using mail or other facility in interstate or foreign commerce with intent to commit crime of violence); 18 U.S.C. § 1959 (attempting, conspiring, or threatening to commit crime of violence in connection with racketeering enterprise); 18 U.S.C. § 2261 (crime of violence against spouse or domestic partner); 18 U.S.C. § 3181 (generally authorizing extradition of persons who committed crimes of violence in foreign countries against United States nationals); 18 U.S.C. § 3561 (mandating at least probation for a first conviction for crime of violence against a spouse or domestic partner); 18 U.S.C. § 5032 (referral of certain juveniles who commit crimes of violence for proceedings in district court).

Another uncertainty about the ACCA identified in *Johnson*, but absent from Section 924(c)(3)(B), is the necessity for courts to go "beyond evaluating the chances that the physical acts that make up the crime injure someone" and to evaluate the risk for injury even "after" completion of the offense. *Id.* at 2557; *see also id.* at 2559 (noting that "remote" physical injury could qualify under the ACCA, but that the clause does not indicate "how remote is too remote"). The Court explained that the ACCA's inquiry into whether a crime "involves conduct" that presents too much risk of injury goes beyond the offense elements. *Id.* at 2557. "The inclusion of burglary and extortion among the enumerated offenses," the Court further explained, confirmed that courts assessing risk had to go "beyond evaluating the chances that the physical acts that make up the crime will injure someone." *Id.* That was so because risk of injury could arise in a burglary *after* the breaking and entering had occurred, and an extortionist might become violent *after* making his demand. *Id.* The consideration of post-offense conduct was therefore part of the ACCA's indeterminate and fatally problematic "wide-ranging inquiry." *Id.*

In contrast, Section 924(c)(3)(B) is significantly narrower. It includes a critical phrase that is not present in the ACCA clause: it applies only when the risk of force occurs "in the course of committing the offense." This means that the assessment is confined to the risks that arise during the commission of the offense. *See United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009) (emphasizing "the textual difference between § 16(b) and" the ACCA residual clause, and explaining that "for an offense to qualify as a § 16(b) crime of violence, the risk of force must arise in the course of *committing* the crime and not merely as a *possible result*") (emphasis in original). Unlike the ACCA, Section 924(c)(3)(B) does not go beyond "the physical acts that make up the crime." *See Johnson*, 135 S. Ct. at 2557. Further, Section 924(c)(3)(B) looks at the risk of the "use of force" rather than the much broader "risk of injury." This focus on the use of force during an

offense, rather than on the potential risk and effects of the offense, limits the statute's reach and avoids the kind of speculation about extra-offense conduct that *Johnson* denounced.

In short, Section 924(c)(3)(B) inquires whether an offense presents a substantial risk that physical force will be used during the commission of the offense. That is a readily applicable standard, and not unduly vague.

### 3. The Supreme Court has not "repeatedly" failed to construe Section 924(c)(3)(B).

The third significant difference between *Johnson* and the instant case is the Supreme Court's emphasis on its own "repeated" inability to develop a "principled and objective standard" for the ACCA. *Johnson*, 135 S. Ct. at 2558. This concern, also absent here, further animated the Court's decision to find the ACCA vague. *See id.* at 2559-60 (noting *Johnson* is the Court's "fifth [case] about the meaning of the [ACCA] residual clause," declaring a "failed enterprise"). In contrast, the Court has addressed Section 924(c) on numerous occasions, and never suggested the slightest difficulty in applying its definition of a "crime of violence." Notably, the Defendant did not even endeavor to argue that a crime like Hobbs Act robbery is not a "crime of violence," until after *Johnson* was decided.

Indeed, in *Leocal*, addressing the Section 16(b) definition that matches that in Section 924(c)(3)(B), a unanimous Court expressed no uncertainty and had no difficulty adopting an interpretive framework that identified one offense (burglary) as the "classic example" of a Section 16(b) qualifying offense, and another (DUI) that was not. *Id.* at 10. The Court's analysis (which was joined by Justice Scalia, the author of *Johnson* and the principal critic of the ACCA's vagueness leading up to *Johnson*) belies a claim that the 924(c) residual clause is too uncertain to be readily applied and to permit evenhanded application.

.   .   .

19

**4.      Unlike the ACCA, Section 924(c)(3)(B) does not present any degree of confusion by lower courts.**

In addition to its other reasons for finding the ACCA vague, the *Johnson* Court observed that there were numerous lower court splits about "the nature of the inquiry" that a court should conduct under the ACCA.  *Johnson*, 135 S. Ct. at 2560.  Significantly, the Court noted that the disagreements "went beyond matters of degree."  *Id.*  There is no such confusion at all with respect to Section 924(c)(3)(B).  In fact, no court has ever held that Hobbs Act robbery is not a crime of violence under the statute, or even considered the possibility before the recent litigation.

**5.      Section 924(c)(3)(B) is materially narrower than the ACCA.**

Under *Leocal*, a crime of violence for purposes of Section 16(b) is limited to "offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."  *Leocal*, 543 U.S. at 10.  The Court specified that Section 16(b) includes only "violent, active" crimes.  *See id.* at 11.  To qualify as a predicate offense under this framework, the offense must proscribe conduct that (1) naturally involves a disregard of a substantial risk of force against another, and (2) the risk of force must arise during the course of committing (3) an active, violent offense.  *Id.* at 10-11.  In fact, the federal public defender's brief in *Johnson* agreed that "[t]hese requirements are meaningfully different than the ACCA's residual clause and make § 16(b) narrower."  *See* Supplemental Reply Brief for the Petitioner, *Johnson v. United States*, 2015 WL 1641122, at *15.

Under Sections 16(b) and 924(c)(3)(B), the ordinary case is defined by the elements of the offense, and a court does not, as in the ACCA, consider risks that arise only after the physical acts constituting the crime have been completed.  The court asks whether the offense elements would "naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."  *Leocal*, 543 U.S. at 11.  The analysis is non-speculative and is

consistent with *Johnson*.  If the risk of the use of force is naturally present in the elements of the offense, it qualifies as a crime of violence under Section 924(c)(3)(B).  This alleviates the concern that *Johnson* had about ACCA's far-ranging inquiry into conduct going beyond the offense elements.

There is nothing vague or speculative about asking whether an offense "naturally" involves a risk of the use of force during the commission of the offense.  The phrase "by its nature" in Sections 16(b) and 924(c)(3)(B) simply triggers application of the categorical approach, which, of course, looks at offense elements.  *See United States v. Velazquez-Overa*, 100 F.3d 418, 420 (5th Cir. 1996) ("the phrase 'by its nature' compels a categorical approach").  It should also be noted here that in *United States v. Dixon*, -- F.3d --, 2015 WL 7422615 (9th Cir. 2015) (cited by the Defendant), the Ninth Circuit *expressly* declined to extend it's holding to Section 924(c).  The Government submits therefore that the statute is clearly not unconstitutionally vague.

### 6.   Supreme Court and Ninth precedent requiring a party to make an as-applied constitutional challenge have not been overruled by *Johnson*.

The *Johnson* Court indicated that a law need not be vague in all its applications to be unconstitutional, but the Court did not decide whether a party must *first* show a law is vague *as applied* to him before he may make a facial challenge.  *See Johnson*, 135 S. Ct. at 2560-61.  Nor did *Johnson* overrule the Supreme Court's numerous cases requiring a court to analyze a vagueness challenge outside of the First Amendment context on the facts of the particular case before it.  *See*, *e.g.*, *Chapman v. United States*, 500 U.S. 453, 467 (1991) (vagueness challenge to sentencing statute); *United States v. Powell*, 423 U.S. 87, 92 (1975); *United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."); *see also United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006); *United States v. Purdy*, 264 F.3d

809, 811 (9th Cir. 2001) ("[O]ur concern is whether the [statute] is impermissibly vague in the circumstances of this case." (quoting *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977) (emphasis added))).

The Court in *Johnson* did reject the view that a provision cannot be facially vague merely because "some conduct clearly falls within the provision's grasp." 135 S. Ct. at 2561.  But the Court did not hold that any possibility of a vague application requires finding a statute void for vagueness. Rather, it concluded that the residual clause was void for vagueness because of its inherent inability to produce "evenhanded, predictable, or consistent" applications." *Id.* at 2563.  The provision was, the Court found, "a judicial morass that defies systemic solution, a black hole of confusion and uncertainty that frustrates any effort to import some sense of order and direction." *Id.* at 2562 (internal quotation marks omitted).  But "there are other statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain." *Smith v. Goguen*, 415 U.S. 566, 577-78 (1974).  For those statutes, the general rule is that a vagueness challenge is not available to one who violates the "hard-core" of the statute. *Id.*  Facial vagueness challenges should therefore be reserved for statutes that "simply ha[ve] no core," "in the sense that no standard of conduct is specified at all." *Id.* (citation and quotation marks omitted).  That is not the case with respect to Section 924(c)(3)(B), where courts have already identified numerous offenses, starting with robbery, that clearly fall within the provision.

The Defendant is therefore wrong to suggest that Section 924(c) cannot constitutionally be applied to him.  There is a strong presumptive validity to Acts of Congress.  *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963).  A court's duty is to construe, rather than condemn, a statute.  *See Skilling v. United States*, 561 U.S. 358, 403 (2010).  The Supreme Court was convinced by "[n]ine years' experience," and by multiple prior decisions, that the ACCA's

residual clause was not susceptible to principled construction. *Johnson*, 135 S. Ct. at 2560.  Here, however, Section 924(c)(3)(B) does not possesses the "'sum'" of factors that led the *Johnson* Court to its conclusion.  *Id.*  The statute's residual clause requires examination whether, in the ordinary case, a particular offense, as defined by its elements, "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." That provision is readily applicable and certainly not vague as applied to the Defendant, whose Hobbs Act robbery offenses obviously presented that risk (a conclusion he himself does not dispute). For this reason as well, the Hobbs Act robbery qualifies as a 924(c) predicate, and this Court should deny the Defendant's Motion.

## **CONCLUSION**

For all of the above reasons, the Defendant has not illustrated that the Magistrate Judge's findings of fact and conclusions of law are erroneous.  Consequently, the Defendant's Motion to Dismiss should be denied.

WHEREFORE, after consideration of the included facts, points, authorities, and arguments, and for the reasons stated in the Magistrate Judge's R&R, the United States respectfully requests that this Court DENY the Defendant's Motion.

DATED this 19th day of January, 2016.

Respectfully Submitted,

DANIEL G. BOGDEN
United States Attorney

_____//s//_____
PHILLIP N. SMITH, JR.
Assistant United States Attorney

1

**<u>CERTIFICATE OF SERVICE</u>**

2

       This is to certify that the undersigned has timely filed and served the Defendant with a copy

3

of the Government's *Response to the Defendant's Objections to Report and Recommendation* via

4

electronic filing.

5

DATED:       January 19, 2016.

6

                          _____//s//_____
                          PHILLIP N. SMITH, JR.

7

                          Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24